UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Yamah Sackie Zina,                                  Case No. 21-cv-2299 (WMW/DTS)

                    Plaintiff,
                                                           **ORDER**
        v.

Terri Robinson, Ur Jaddou, Alejandro
Mayorkas and Merrick Garland,

                    Defendants.

---

Plaintiff commenced this action seeking judicial review of the denial of an immigrant visa petition.  Defendants now move to dismiss and the parties cross-move for summary judgment.  (Dkts. 30, 35.)  For the reasons addressed below, the Court denies Plaintiff's motion for summary judgment, denies Defendants' motion to dismiss and grants Defendants' alternative motion for summary judgment.

## BACKGROUND

Plaintiff Yamah Sackie Zina is a United States citizen who resides in Minnesota.  Defendant Terri Robinson is the Director of the National Benefits Center, which is an office of the United States Citizenship and Immigration Services (USCIS) that receives and processes immigration visa applications and petitions.  Defendant Ur Jaddou is the Director of USCIS.  Defendant Alejandro Mayorkas is the Secretary of the United States Department of Homeland Security (DHS), which is the federal agency that administers and enforces federal immigration laws.  Defendant Merrick Garland is the United States Attorney General.

Zina, who was born in Liberia, immigrated to the United States in 2010. Zina's cousin, who currently resides in Liberia, gave birth to Marie Zina in or around 2005. Marie was not issued a birth certificate at the time of her birth. Zina assisted in caring for Marie in Liberia after Marie's father died in November 2007. When Zina immigrated to the United States in 2010, she left Marie in the physical care of others but continued to support Marie financially.

In January 2016, Zina became a naturalized United States citizen. Shortly thereafter, Zina adopted Marie through the Liberian court system. Zina's adoption of Marie was finalized in September 2016. Currently, Marie resides in Liberia with Zina's sister-in-law, who agreed to care for Marie until Marie is permitted to join Zina in the United States.

In February 2020, Zina filed a Form I-130 petition to classify Marie as a relative of a United States citizen for the purpose of obtaining an immigrant visa. Zina's I-130 petition included, among other documents, a copy of the September 2016 adoption decree, Marie's baptism and birth certificates, an affidavit from Marie's biological mother detailing the circumstances of Marie's birth and adoption and letters of attestation from Marie's school and medical provider.

On February 19, 2021, USCIS provided Zina with a notice of intent to deny her I-130 petition. The notice advised Zina that her I-130 petition included insufficient evidence of Marie's identity, Zina's full and final adoption of Marie, two years of legal custody of Marie and two years of joint residence with Marie. With respect to Marie's identity, USCIS advised Zina that, because Marie's birth certificate was registered more

than 13 years after Marie's alleged date of birth, "additional information and evidence are required regarding [Marie's] birth." USCIS's notice also cites the Department of State's Foreign Affairs Manual and explains that, "[i]f the child's birth certificate was untimely registered, procedurally not within one year of the birth, secondary evidence is also required." With respect to the joint-residence requirement, USCIS's notice requests "evidence that you and the child resided in joint residence at the same address for at least two years, before or after the adoption and before you filed this Form I-130."

Zina responded on May 19, 2021, and provided supplemental evidence. With respect to Marie's identity, Zina asserted through counsel that the reason for the delayed issuance of Marie's birth certificate is because Marie's birth occurred shortly after a civil war that impacted Liberia's governmental operations. With respect to the joint-residence requirement, Zina reasserted her previous arguments and emphasized the evidence she had previously submitted. Zina also provided supplemental evidence as to Marie's identity and the joint-residence requirement, including photographs, an affidavit from Zina and written statements from Marie's biological mother, two uncles of Marie's biological parents and Zina's former neighbor in Liberia.

On June 11, 2021, USCIS provided Zina with a second notice of intent to deny her I-130 petition. The second notice advised Zina that the I-130 petition continued to lack sufficient evidence of Marie's identity and joint residence with Zina. USCIS's second notice included the following statement regarding Zina's evidence of Marie's identity:

> You submitted a copy of [Marie's] birth certificate that was registered over 13 years after [Marie's] birth. Your attorney states that [Marie] does not have a timely-registered birth

certificate due to disorder after the Liberian civil war. However, you did not submit a written statement from a relevant authority on government letterhead that establishes why a timely registered birth certificate for [Marie] is not available. As such, additional information and evidence are required regarding [Marie's] birth.

As to the joint-residence requirement, USCIS observed that Zina had provided insufficient evidence to prove that she resided with Marie from November 2007 until September 2010, when Zina moved to the United States. USCIS noted that Zina's supplemental evidence—namely, school, baptismal, medical and financial records—all pertains to time periods *after* Zina had immigrated to the United States and, therefore, cannot corroborate Zina's joint residence with Marie prior to September 2010. USCIS directed Zina to "[s]ubmit evidence that you and [Marie] resided in joint residence at the same address for at least two years, before or after the adoption and before [Zina] filed this Form I-130," observing that joint residence may be counted in the aggregate but that "mere visits with the child do not count toward the joint residence requirement." USCIS advised Zina that evidence of joint residence may include rental documentation, school records demonstrating a joint residential address, income tax returns reflecting Marie as a dependent, medical records showing Zina as the responsible party or insurance policies of Zina's under which Marie was covered.

On July 3, 2021, Zina responded to USCIS's second notice of intent to deny her I-130 petition. As to Marie's birth certificate, Zina reasserted her prior arguments and emphasized the affidavits and corroborating evidence she previously submitted. Zina also included a report prepared in 2017 by the Immigration and Refugee Board of

Canada, which reflects that the low birth-registration rate in Liberia has been impacted by regional and gender disparities.  As to the joint-residence requirement, Zina reasserted her prior arguments and emphasized the evidence she previously submitted.

Following a third notice of intent to deny, USCIS formally denied Zina's I-130 petition on August 25, 2021.  The denial notice concludes that Zina failed to demonstrate Marie's eligibility for classification as an immediate relative of a United States citizen because Zina had provided insufficient evidence of Marie's identity and joint residence with Zina.  The denial notice also advises Zina that, within 30 days, she may appeal the decision to the Board of Immigration Appeals (BIA) or submit a motion to USCIS to reopen or reconsider the decision.  Zina did not file an appeal with the BIA or a motion to reconsider with USCIS.

Zina commenced this action on October 17, 2021, seeking judicial review of the denial of her I-130 petition.  Zina alleges that Defendants violated the Administrative Procedure Act (APA) by unreasonably and arbitrarily rejecting her I-130 petition.  The parties now cross-move for summary judgment.  In the alternative, Defendants move to dismiss for lack of subject-matter jurisdiction.

## ANALYSIS

### I.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

As a threshold matter, Defendants argue that Zina's complaint should be dismissed because this Court lacks subject-matter jurisdiction.  According to Defendants, Zina failed to exhaust her administrative remedies and should have filed an appeal with the BIA or a motion to reconsider with USCIS before seeking judicial review.

This Court has jurisdiction to review Defendants' denial of an immigration petition under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, which provides for judicial review of agency action. *See Coteau Props. Co. v. Dep't of Interior*, 53 F.3d 1466, 1471 (8th Cir. 1995); *Svelte Constr., LLC v. Baran*, 368 F. Supp. 3d 1301, 1306–09 (D. Minn. 2019) (reviewing USCIS's denial of petition for nonimmigrant visa under APA). Defendants correctly observe that, before seeking judicial review of an administrative agency's decision, an individual typically must exhaust all administrative remedies. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) *superseded by statute on other grounds as recognized in Woodford v. Ngo*, 548 U.S. 81 (2006). However, when the APA applies, exhaustion of administrative remedies "is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993); *accord Coteau Props.*, 53 F.3d at 1471.

Here, Defendants concede that Zina was not required, by statute or agency rule, to administratively appeal the denial of her I-130 petition before seeking judicial review. *See* 8 C.F.R. §§ 103.3(a)(1)(ii) (providing that a petitioner "may" appeal to the BIA), 1003.1(b) (providing for circumstances in which an appeal "may" be filed with the BIA). Indeed, Defendants' notices of denial to Zina advised her that she "may" appeal the decision to the BIA. Judges in this District have reviewed USCIS decisions under the APA in analogous circumstances when no BIA appeal was filed. *See, e.g.*, *Svelte Constr.*, 368 F. Supp. 3d at 1306–09 (reviewing USCIS's denial of petition for

nonimmigrant visa under APA).   As such, Defendants have not established that administrative exhaustion is a prerequisite to this Court's review.

Defendants nonetheless suggest that this Court lacks subject-matter jurisdiction because the denial of Zina's I-130 petition was not a "final" agency action, as the APA requires.   *See* 5 U.S.C. § 704 (providing that "*final* agency action for which there is no other adequate remedy in a court [is] subject to judicial review" (emphasis added)). "Courts are not free to impose an exhaustion requirement as a rule of judicial administration [when] the agency action has already become 'final' " under the APA. *Darby*, 509 U.S. at 154.   The APA defines "agency action" to include "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof."   5 U.S.C. § 551(13); *see also* 5 U.S.C. § 701(b)(2) (incorporating definition of "agency action" under Section 551).   To be considered "final," an agency action "must mark the consummation of the agency's decisionmaking process" and "must not be of a merely tentative or interlocutory nature."   *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks omitted).   And a final agency action "must be one by which rights or obligations have been determined, or from which legal consequences will flow."   *Id.* at 178 (internal quotation marks omitted).

Defendants identify no legal authority establishing that USCIS's denial of an I-130 petition is not a "final" agency action.   Nor do Defendants meaningfully assert that the denial of Zina's I-130 petition was tentative, interlocutory or lacked legal consequences or a determination of legal rights.   To the contrary, USCIS's denial notice unequivocally denied Zina's I-130 petition based on a review of the petition and supporting evidence.

And that denial resulted in legal consequences and a determination of legal rights—namely, preventing the classification of Marie as Zina's qualifying relative for immigration purposes.  As such, USCIS's denial notice constitutes final agency action under the APA.

For these reasons, the Court rejects Defendants' argument that this Court lacks subject-matter jurisdiction.

## II.    Summary Judgment

The parties also cross-move for summary judgment as to whether Defendants violated the APA when USCIS denied Zina's I-130 petition.[1]  Summary judgment is proper when the record before the district court establishes that there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In a challenge to an agency action under the APA, the dispute can usually be resolved on summary judgment because the entire case on review is a question of law."  *United Food & Com. Workers Union, Local No. 663 v. U.S. Dep't of Agric.*, 532 F. Supp. 3d 741, 768–69 (D. Minn. 2021) (internal quotation marks omitted).  Here, as the parties' dispute involves purely legal questions, there are no disputed material facts.

The APA requires federal agencies to engage in "reasoned decisionmaking." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (internal quotation marks omitted).  A reviewing court must set aside an agency's action,

---

[1]    Although Zina's briefing also references an equal-protection claim, Zina alleges no such claim in her complaint.  Therefore, the Court does not address Zina's equal-protection arguments.

findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Judicial review of an agency action under this standard is "narrow and a court is not to substitute its judgment for that of the agency."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  "Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Id.* (internal quotation marks omitted). An agency's decision is arbitrary or capricious if the agency relied on factors that Congress did not intend the agency to consider, entirely failed to consider an important factor, offered an explanation for its decision that is contrary to the evidence or rendered a decision that "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Svelte Constr.*, 368 F. Supp. 3d at 1306 (quoting *El Dorado Chem. Co. v. E.P.A.*, 763 F.3d 950, 955–56 (8th Cir. 2014)).

Here, the relevant law is the Immigration and Nationality Act and its implementing regulations, which govern petitions for immigrant visas for adopted children of United States citizens.  *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a), 1154(a); 8 C.F.R. §§ 204.1, 204.2(d)(2).  The applicable regulations require a petitioner to submit documentary evidence that establishes "the claimed relationship of the petitioner to the beneficiary."  8 C.F.R. § 204.1(f)(1).  This documentation "must be in the form of primary evidence, if available," but if "it is established that primary evidence is not available, secondary evidence may be accepted."  *Id.*  If the required evidence in support

of a visa petition is unavailable or non-existent, there is a presumption of visa ineligibility.  8 C.F.R. 103.2(b)(2)(i).

USCIS denied Zina's I-130 petition on two independent bases.  First, USCIS rejected Zina's I-130 petition because Marie's birth certificate was registered more than 13 years after Marie's birth and Zina failed to provide a written statement from a government authority establishing why a timely registered birth certificate is unavailable.  Second, USCIS rejected Zina's I-130 petition because Zina provided insufficient evidence that she and Marie had two years of joint residence.  Zina contends that these bases for denying her I-130 petition are arbitrary, capricious and an abuse of discretion, and that USCIS misapplied the evidentiary standard.  The Court addresses each argument in turn.

### A.  Birth Certificate

USCIS denied Zina's I-130 petition in part because she provided insufficient evidence of Marie's identity—namely, because Marie's birth certificate was registered more than 13 years after Marie's birth.

The applicable regulations identify the specific types of primary or secondary evidence that a petitioner must submit to establish particular familial relationships, including petitions "for a child or son or daughter."  8 C.F.R. § 204.2(d).  The primary and secondary evidence required to establish a parent-child relationship differs based on the *type* of parent-child relationship.  8 C.F.R. § 204.2(d)(2)(i)–(vii) (establishing distinct evidentiary requirements for a "legitimate child," a "legitimated child," an "illegitimate child," a "stepchild" and an "adopted child").  The regulations expressly require a birth

certificate as primary evidence for a "legitimate child," a "legitimated child," an "illegitimate child" and a "stepchild."  8 C.F.R. § 204.2(d)(2)(i)–(iv).

However, the applicable regulations do *not* require a birth certificate as evidence for an adopted child.  8 C.F.R. § 204.2(d)(2)(vii).  Instead, to establish a familial relationship involving an adopted child, a petitioner must submit a "copy of the adoption decree" and evidence that "the child has been in the legal custody of the adopting parent or parents and has resided with the adopting parent or parents for at least two years."  *Id.* The parties have not identified—and the Court's research has not found—any legal authority that requires a visa petitioner to submit a birth certificate to establish a familial relationship between a parent and an adopted child.[2]  This is not surprising, because a birth certificate is not probative of a familial relationship that is based on adoption, which is established by law through an adoption decree rather than by biological parentage through birth.[3]

Even if a birth certificate were required in the adoption context, nothing in the governing regulations distinguishes between a timely birth certificate and a delayed birth certificate.  8 C.F.R. §§ 204.1, 204.2.  When evaluating whether a visa petitioner has satisfied his or her burden of proof in cases requiring a birth certificate to establish a

---

[2]     Although the regulations require the adoption to have occurred before the child's sixteenth birthday, nothing in the regulations requires this fact to be established using a birth certificate.  *See* 8 C.F.R. § 204.2(d)(2)(vii).  Here, the record contains evidence— including the adoption decree—demonstrating that Zina adopted Marie before Marie's sixteenth birthday, a fact that the parties do not dispute.

[3]     Similarly, the applicable regulations provide that a familial relationship based on marriage is established based on a marriage certificate rather than a birth certificate.  *See* 8 C.F.R. § 204.2(a)(2).

familial relationship, the BIA has "been reluctant to accord delayed birth certificates the same weight [the BIA] would give birth certificates issued at the time of birth." *In re Rehman*, 27 I&N Dec. 124, 126 (B.I.A. 2017) (quoting *In re Bueno*, 21 I&N Dec. 1029, 1032 (B.I.A. 1997)). The BIA has "reasoned that birth certificates with delayed registration dates are less reliable because 'the opportunity for fraud is much greater with a delayed birth certificate.' " *Id.* (quoting *In re Serna*, 16 I&N Dec. 643, 645 (B.I.A. 1978)). However, the BIA also has recognized "the difficulty in balancing situations in which a delayed birth certificate may be the only type of birth certificate available" because penalizing individuals who "were not born in hospitals or other facilities where births are registered would be unjust." *Id.* (internal quotation marks omitted).

"To balance the competing concerns of fraud and fairness," the BIA has "held that a delayed birth certificate is not generally conclusive evidence and must instead be evaluated in light of the other evidence of record and the circumstances of the case." *Id.* (internal quotation marks omitted). As such, when evaluating whether a delayed birth certificate is reliable or may suggest fraud, "an adjudicator must consider all the other evidence of record and the circumstances of the case to determine whether a petitioner has submitted sufficient reliable evidence to demonstrate the claimed familial relationship by a preponderance of the evidence." *Id.* at 127. Factors relevant to this evaluation include, among others, information about the availability of birth registrations in the country of birth; credible explanations about the personal, societal or historical circumstances that prevented the timely issuance of a birth certificate; and evidence that

the parental relationship was independently corroborated prior to the registration of the birth. *Id.*

Here, in addition to Marie's delayed birth certificate, the record includes (1) an adoption decree from a Liberian court that reflects Marie's date and place of birth and the identity of her biological mother; (2) Marie's certificate of baptism from the Lutheran Church in Liberia, which includes a last name matching Zina's name; (3) sworn affidavits from Marie's biological mother and Zina that reflect Marie's date and place of birth; (4) unsworn statements from Marie's biological mother and other relatives detailing the circumstances of Marie's birth, adoption and relationship with Zina; (5) letters of attestation from Marie's education and medical providers in Liberia reflecting Marie's age and Zina's status as Marie's adoptive mother; and (6) photographs of Zina and Marie together in Liberia at various stages of Marie's childhood. In addition, the supplemental evidence included with Zina's I-130 petition includes empirical sources establishing that the birth registration rate in Liberia is low and has been impacted by regional and gender disparities.

Despite the foregoing evidence, USCIS's denial notice states that Zina's I-130 petition was denied in part because she "did not submit an original birth certificate or any other evidence that establishes [Marie's] identity, country of origin, parentage, and age." The denial notice provides little explanation as to why the evidence Zina provided was insufficient. Defendants have not identified an applicable statute or regulation that distinguishes between an original and a photocopy of a birth certificate. To the contrary, the regulations contemplate "[o]riginal *or photocopied* documents," as long as the

documents are "submitted in accordance with the form instructions." 8 C.F.R. § 103.2(b)(4) (emphasis added). Although "USCIS may, at any time, request submission of an original document for review," 8 C.F.R. § 103.2(b)(5), USCIS did not do so here. Rather, USCIS's two notices of intent to deny Zina's I-130 petition expressly requested "a copy" of Marie's birth certificate.

In addition, nothing in USCIS's denial notice suggests that, when evaluating the reliability of Marie's delayed birth certificate, USCIS considered the relevant factors identified by the BIA. *See In re Rehman*, 27 I&N Dec. at 126–27. Nor does the denial notice explain why Marie's delayed birth certificate raises concerns about fraud or reliability that are not adequately remedied by the other evidence in the record. *See id.* at 128 (observing that "an adjudicator's decision should explain his or her reasoning in evaluating the reliability and persuasiveness of all the evidence in the record"). The purpose of considering the *Rehman* factors is to "determine whether a petitioner has submitted sufficient reliable evidence to demonstrate *the claimed familial relationship* by a preponderance of the evidence" in light of "the circumstances presented." *Id.* at 127 (emphasis added). Here, the circumstances involve an adoption. As addressed above, the applicable regulations do not require a birth certificate to establish a familial relationship based on adoption. Rather, the regulations require a copy of the *adoption decree* to establish a familial relationship based on adoption. 8 C.F.R. § 204.2(d)(2)(vii). Because the claimed familial relationship in this case is an adoptive relationship, and Zina undisputedly provided sufficient evidence that she legally adopted Marie, Defendants'

denial of Zina's I-130 petition based on an insufficient birth certificate was contrary to the governing regulations and the evidence.

Defendants attempt to avoid this result by relying on USCIS's denial notice, which directed Zina to submit "a written statement from a relevant authority on government letterhead that establishes why a timely registered birth certificate for [Marie] is not available." The applicable regulations provide that, if "a record does not exist, the applicant or petitioner must submit an original written statement on government letterhead establishing this from the relevant government or other authority." 8 C.F.R. § 103.2(b)(2)(ii). But this requirement is not implicated here for at least three reasons.

First, as addressed above, Marie's birth certificate is *not* a required record in the adoption context. *See* 8 C.F.R. § 204.2(d)(2)(vii). Second, even if a birth certificate were required, Marie's birth certificate undisputedly *does* exist, and the only dispute is whether that birth certificate is sufficiently reliable in light of its delayed issuance—an evaluation that USCIS did not perform.[4] Third, a I-130 petitioner is *not* required to provide a written statement on government letterhead as to unavailable records if "the Department of State's Foreign Affairs Manual indicates this type of document generally does not exist." 8 C.F.R. § 103.2(b)(2)(ii). It is USCIS's burden to consult with the Foreign Affairs Manual to determine whether records are generally available. *See* 8 C.F.R. §§

---

[4] Defendants contend that Marie's delayed birth certificate also was insufficient because it was a "copy" rather than an "original" birth certificate "as issued." But Defendants misstate the record. USCIS's notices of intent to deny Zina's I-130 petition requested "a *copy* of [Marie's] foreign birth certificate issued by the appropriate civil authority." (Emphasis added.) USCIS never requested an "original" birth certificate or used the phrase "as issued."

204.1(f)(1), 204.2(d)(2)(v).  As relevant here, the Foreign Affairs Manual provides that, in Liberia, "[m]ost births are not registered in a timely manner and often are only registered when a birth certificate is needed for immigration purposes or other reason."[5] As such, USCIS erred when it required Zina to provide a written statement on government letterhead as to the absence of a timely issued birth certificate.

In summary, USCIS misapplied the applicable regulations and legal standards when it denied Zina's I-130 application based on an insufficient birth certificate and, therefore, this aspect of USCIS's decision is contrary to the governing regulations and the evidence.  The governing regulations do not require a petitioner to submit a birth certificate to demonstrate a familial relationship based on adoption.  Instead, the regulations require an adoption decree, which Zina undisputedly provided.  And even if a birth certificate were required, USCIS did not provide a reasoned basis for determining that Marie's delayed birth certificate, together with the other primary and secondary evidence that Zina submitted, failed to demonstrate a familial relationship based on adoption by a preponderance of the evidence.  *See In re Rehman*, 27 I&N Dec. at 126–28.

Accordingly, the denial of Zina's I-130 petition based on an insufficient birth certificate was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law, in violation of the APA.

---

[5]    U.S. Dep't of State, Liberia, Reciprocity Schedule: Birth, Death, Burial Certificates,  *available at*  https://travel.state.gov/content/travel/en/us-visas/Visa-Reciprocity-and-Civil-Documents-by-Country/Liberia.html (last visited Jan. 9, 2023).

### B.   Joint Residence

USCIS also denied Zina's I-130 petition in part because she provided insufficient evidence that she and Marie had two years of joint residence.

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs.*, 463 U.S. at 43.  Rather, a reviewing court should determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (internal quotation marks omitted).   "Arbitrary and capricious is a highly deferential standard of review." *Adventist Health Sys./SunBelt, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 17 F.4th 793, 803 (8th Cir. 2021).   A district court's "function on a review under the APA is not to reweigh the evidence, or assess credibility, but rather, to determine whether the decision of the [agency] is arbitrary and capricious, or is contrary to law." *Kakaygeesick v. Salazar*, 656 F. Supp. 2d 964, 986 (D. Minn. 2009).

In a visa petition involving an adopted child, the petitioner must demonstrate joint residence with the adopted child for a period of two years preceding the filing of the petition.   8 C.F.R. § 204.2(d)(2)(vii)(B).   "The evidence must clearly indicate the physical living arrangements of the adopted child, the adoptive parent(s), and the natural parent(s) for the period of time during which the adoptive parent claims to have met the residence requirement." *Id.*  Such evidence "may include, but is not limited to, evidence that the adoptive parent owns or maintains the property where the child resides and provides financial support and day-to-day supervision." *Id.*   The joint-residence

requirement "is accounted for in the aggregate" and, therefore, a break in joint residence "will not affect the time already fulfilled." 8 C.F.R. § 204.2(d)(2)(vii)(C). But "mere periodic visits by an adopting parent in the home of the child do not satisfy the residence requirement." *In re Repuyan*, 19 I&N Dec. 119, 121, 122 (B.I.A. 1984) (observing that Congress's inclusion of adoptees under the INA contemplated "a carefully defined class of adoptees" and "safeguards" intended "to prevent fraudulent adoptions [that] were entered into solely to confer immediate relative or preference status").

The regulations do not distinguish between primary and secondary evidence as to the joint-residence requirement. *See* 8 C.F.R. § 204.2(d)(2)(vii). In general, however, secondary evidence "may take the form of historical evidence," and "such evidence must have been issued contemporaneously with the event which it documents [and] may include, but is not limited to, medical records, school records, and religious documents." 8 C.F.R. § 204.2(d)(2)(v). "Affidavits may also be accepted" and "must be sworn to by persons who . . . have personal knowledge of the event to which they attest." *Id.* Secondary evidence is "evaluated for its authenticity and credibility." *Id.*

Zina asserted in her I-130 petition, and alleges in her complaint, that she resided with Marie after the death of Marie's father in November 2007. It is undisputed that Zina did not reside with Marie after Zina immigrated to the United States in September 2010. As such, the evidence necessary for Zina to establish the joint-residence requirement must pertain to the period of time between November 2007 and September 2010. Zina's I-130 petition includes the following evidence pertaining to that time period: (1) an unsworn written statement from Marie's birth mother, in which Marie's birth mother

asserts that she "gave" Marie to Zina "at the age of two . . . years to be her own child"; (2) dated and undated photographs of Marie and Zina together; (3) a sworn affidavit from Zina attesting that she "took [Marie] to live with [Zina]" when Marie "was around two years old," and that they lived together at the same house "for about three years before [Zina] moved to the United States"; and (4) unsworn statements from other relatives and a former neighbor asserting that Marie lived with Zina between 2007 and 2010.

USCIS's denial notice concludes that this evidence is "insufficient to establish that [Marie] jointly resided with [Zina] for at least two years."  The denial notice observes that Zina provided no evidence that she owned or maintained the property where Marie resided, and that the affidavits and statements attesting to this period of joint residence were not "accompanied by direct, independent and corroborative evidence."  And the denial notice observes that most of Zina's other evidence—including school, medical and financial records—does not pertain to the time period in which Zina resided in Liberia, but instead pertains to the time period when Zina undisputedly lived in the United States.

The applicable regulations provide that a visa petitioner's evidence will be "evaluated for its authenticity and credibility."  *Id.*  And an agency is entitled to deference with respect to the weight and credibility of evidence.  *See, e.g.*, *Kakaygeesick*, 656 F. Supp. 2d at 986; *Adventist Health*, 17 F.4th at 803.  Here, with the exception of several photographs that do not necessarily establish joint residence as opposed to mere visits, none of Zina's historical evidence was created contemporaneously with the alleged period of joint residence.  *See* 8 C.F.R. § 204.2(d)(2)(v) (providing that "historical evidence . . . must have been issued contemporaneously with the event which it

documents"). USCIS had a reasoned basis, therefore, to give little weight to this evidence and to request additional evidence. Although an I-130 petitioner may rely on sworn affidavits based on personal knowledge, *see id.*, most of the written statements on which Zina relies are unsworn, do not attest to personal knowledge and include only vague information about the alleged period of joint residence. As such, USCIS also had a reasoned basis for giving little weight to this evidence.

Zina also provided her own affidavit, and she correctly observes that a "petitioner's statement must be given due consideration" by USCIS. *See In re Treasure Craft of Cal.*, 14 I&N Dec. 190, 194 (B.I.A. 1972). But giving "due consideration" does not mean that a petitioner's statement is automatically entitled to dispositive weight. USCIS expressly considered the authenticity and credibility of Zina's affidavit, the contents of which are relatively vague. USCIS concluded that Zina's affidavit required independent corroboration. Indeed, Zina's affidavit does not clearly establish whether she owned or maintained the property where Marie resided, the extent to which she provided financial support and day-to-day supervision of Marie or the physical living arrangements of Zina and Marie and Marie's biological mother during the alleged period of joint residence. *See* 8 C.F.R. § 204.2(d)(2)(vii)(B). Moreover, because Zina is not a disinterested party, it was reasonable for USCIS to give her sworn statements less weight than direct, independent and corroborative evidence from a disinterested source.

Based on the foregoing record, USCIS had a reasoned basis to request additional corroborative information pertaining to the joint-residence requirement. *See* 8 C.F.R. § 103.2(b)(8)(iii) (providing that, if "the evidence submitted does not establish

eligibility," USCIS may "request more information or evidence" from the petitioner). USCIS did so by advising Zina that additional evidence of joint residence may include rental documentation, school records demonstrating a joint residential address, income tax returns that reflect Marie as a dependent, medical records showing Zina as the responsible party or insurance policies under which Marie was covered.   As Zina undisputedly failed to provide any such evidence, USCIS had a reasoned basis to conclude that Zina failed to provide sufficient evidence that she "own[ed] or maintain[ed] the property" where Marie resided and provided "financial support and day-to-day supervision" during the alleged period of joint residence, or evidence that "clearly indicate[s] the physical living arrangements" of Zina, Marie and Marie's biological mother during the alleged period of joint residence.  *See* 8 C.F.R. § 204.2(d)(2)(vii)(B).

Zina nonetheless argues that USCIS's decision failed to consider Liberia's lack of a formal residential-address system.  The record does not demonstrate that Zina presented such evidence to USCIS in support of her I-130 petition.  Moreover, even if USCIS had considered and accepted such evidence, the lack of a formal residential-address system in Liberia would not remedy the evidentiary defects addressed above with respect to Zina's vague, unsworn and non-contemporaneous evidence of joint residence.  Evidence that Liberia lacked a formal residential-address system would not have significantly impacted the weight and credibility of Zina's other evidence.

Zina also argues that USCIS failed to state or apply the correct evidentiary burden when denying her I-130 petition because the denial notice did not specifically evaluate all the evidence in the record and state whether each piece of evidence was sufficient to

satisfy the preponderance-of-the-evidence standard.  The denial of an I-130 petition must "explain in writing the specific reasons for denial."   8 C.F.R.  § 103.3(a)(1)(i). Defendants concede that USCIS's denial notice "did not specifically identify the standard of review it was employing."  But although an agency must *apply* the correct evidentiary standard, Zina identifies no legal authority requiring an agency to specifically articulate the evidentiary standard the agency applied in its written decision.   To the contrary, administrative agencies are entitled to a presumption that they "act properly and according to law."  *Parra-Morela v. Holder*, 504 F. App'x 461, 462 (6th Cir. 2012) (quoting *FCC v. Schreiber*, 381 U.S. 279, 296 (1965)).   A reviewing court must determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action," and that explanation should include "a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs.*, 463 U.S. at 43.  However, absent clear evidence to the contrary, courts presume that public officers "have properly discharged their official duties."  *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926).   Zina identifies nothing in the record to suggest that USCIS misunderstood or misapplied the preponderance-of-the-evidence standard when evaluating her I-130 petition.  To the contrary, USCIS's decision is consistent with the correct evidentiary standard and, for the reasons addressed above, USCIS's evaluation of Zina's joint-residence evidence reflects a rational connection between the evidence, the law and the decision.

In summary, to the extent that USCIS denied Zina's I-130 petition for lack of sufficient joint-residence evidence, Zina has not demonstrated that USCIS relied on

improper factors, failed to consider an important factor, offered an explanation for its decision that is contrary to the evidence or rendered a decision that is so implausible that the decision could not be ascribed to a difference in weighing the evidence.  *See El Dorado*, 763 F.3d at 955–56.  Instead, Zina's arguments reflect disagreements with the manner in which USCIS evaluated the weight, credibility, authenticity and reliability of Zina's evidence.

Accordingly, the denial of Zina's I-130 petition based on insufficient evidence to support the joint-residence requirement was not arbitrary, capricious, an abuse of discretion or contrary to law.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1.     Defendants Terri Robinson, Ur Jaddou, Alejandro Mayorakas and Merrick Garland's motion to dismiss, (Dkt. 30), is **DENIED**.

2.     Defendants Terri Robinson, Ur Jaddou, Alejandro Mayorakas and Merrick Garland's alternative motion for summary judgment, (Dkt. 30), is **GRANTED**.

3.     Plaintiff Yamah Sackie Zina's motion for summary judgment, (Dkt. 35), is **DENIED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  January 12, 2023                          s/Wilhelmina M. Wright
                                                 Wilhelmina M. Wright
                                                 United States District Judge